# UNITED STATES DISTRICT COURT

# DISTRICT OF ALASKA

| | | |
|---|---|---|
| THOMAS LEASK and BRENDA LEASK, | ) ) ) | |
| Plaintiffs, | ) ) | 1:16-CV-00011 JWS |
| vs. | ) ) | ORDER AND OPINION |
| HOWARD WALCOTT, *et al.*, | ) ) | [Re: Motion at docket 17] |
| Defendants. | ) ) | |

## I. MOTION PRESENTED

At docket 17, Defendants filed a motion for summary judgment, asking the court to enforce a settlement agreement they claim they had with Plaintiffs. Plaintiffs Thomas and Brenda Leask respond at docket 22. Defendants reply at docket 25. Oral argument was not requested and would not assist the court.

## II. BACKGROUND

In August of 2014, Plaintiff Thomas Leask was working as a crew member on the vessel AURIE G. when his left hand was pulled into the deck winch. The accident resulted in the amputation of his fingers. The insurance policy issued for the vessel had a policy limit of $300,000. Plaintiff began receiving medical expenses and maintenance payments via the insurance adjuster, Scott Robinson. The payments began depleting

the policy value. In early 2016, Plaintiffs began discussing settling with Defendants, the vessel owners, for the remaining policy limit. Through email, Robinson informed Plaintiffs that as of February 2016 the amount left on the policy coverage was $157,592.06. In response, Plaintiffs indicated that they would be willing to settle with the vessel owner for the remaining policy limit if funds were tendered by a certain date. Email exchanges between Robinson and the Plaintiffs continued through March and April. On May 26, 2016, after not hearing from Robinson since April 17, 2016, Plaintiffs filed their complaint. Defendants now assert that the parties reached an agreement to settle for the remaining policy amount and that the agreement should be enforced and the case dismissed. Plaintiffs contend that the parties never reached an agreement.

### III.  STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] The materiality requirement ensures that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[2] Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3] However, summary judgment is mandated "against a party who fails to make a showing sufficient to

---

[1] Fed. R. Civ. P. 56(a).

[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[3] *Id.*

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[4]

The moving party has the burden of showing that there is no genuine dispute as to any material fact.[5] Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not present evidence to show that summary judgment is warranted; it need only point out the lack of any genuine dispute as to material fact.[6] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[7] All evidence presented by the non-movant must be believed for purposes of summary judgment and all justifiable inferences must be drawn in favor of the non-movant.[8] However, the non-moving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[9]

## IV. DISCUSSION

Defendants assert that the parties reached a settlement agreement through email correspondence between Plaintiffs and Defendants' insurance adjuster. If true,

---

[4]*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[5]*Id.* at 323.

[6]*Id.* at 323-25.

[7]*Anderson,* 477 U.S. at 248-49.

[8]*Id.* at 255.

[9]*Id.* at 248-49.

and the parties did in fact reach an agreement, the court does not have the discretion to decline to enforce it.[10] On the other hand, if there is a genuine dispute of material fact as to the existence of a settlement agreement, or the terms thereof, the court cannot summarily enforce the agreement.[11]

"[S]ettlement agreements are, at base, merely a species of contract and therefore must meet basic contractual requirements."[12] The parties then had a settlement agreement if their email exchanges contain all the elements of a contract. The elements of a contract consist of "'an offer encompassing all essential terms, an unequivocal acceptance by the offeree, consideration, and an intent to be bound.'"[13]

The parties do not dispute the material facts here. All communications were through email, and the emails have been presented to the court. The series of emails is as follows:

1) February 18, 2106 email from Robinson to Plaintiffs: "[W]e write in response to your email of February 17, 2016. You have inquired as to what has been paid to date." The email goes on to list what has been paid from the insurance policy, and then states in bold that the remaining policy limit is $157,592.06. It acknowledges that the Plaintiffs do not want to mediate and that they have made a demand. It states that the vessel owner "has no money to contribute to the settlement."

2) March 3, 2016 email from Plaintiffs to Robinson: "[We] have decided that we would like to end my claim. . . . I've thought long and hard if I should sue the boat owner but I don't think it would be worth it. I want to move on

---

[10]*Chilkoot Lumber Co. v. Rainbow Glacier Seafoods*, 252 P.3d 1011, 1014-15 (Alaska 2011).

[11]*Colton v. Colton*, 244 P.3d 1121, 1127 n.13 (Alaska 2010)

[12]*Colton*, 244 P.3d at 1127.

[13]*Magill v. Nelbro Packing Co.*, 43 P.3d 140, 142 (Alaska 2001) (quoting *Davis v. Bykman*, 938 P.2d 1002, 1006 (Alaska 1997)).

-4-

and settle for the rest of the insurance money so that I can at least get caught up on bills, put food on the table and not have to worry about if my lights will be shut off. This money will help me do that. If you want me to just move on and not sue, then I want to be paid by March 24, 2016. So I would have to have this money by this date and no later. I'm sure you need me to sign paperwork to close my claim if I am paid all of the insurance that is left."

3) <u>March 17, 2016 email from Robinson to Plaintiffs</u>: Vessel interests have agreed to settle the claim for the remaining policy limits. We are trying to make sure all known invoices are paid with HMC. We will put a release and settlement letter together no later than next week. This is taking a little longer than you might like as HMC has made some inquiries as to payments. . . . If you are comfortable in settling your claim and taking the remaining policy limits now, you may later have to address and resolve any disputes with HMC. We just want to make sure you are aware that [if] HMC or any other medical provider does surface we will direct them to you. In addition, when we do settle we will need to set aside a small amount of money ($5k) to address any final indemnity or expense issues that may arise. The remaining withheld money would be tendered to you within 30 days of settlement. If you have any questions, or additional information that you would like us to consider please contact the undersigned. We await your written response."

4) <u>March 28, 2016 email from Robinson to Plaintiffs</u>: "[W]e have confirmed that effective March 25, all medical invoices have been finalized with HMC and they have no other outstanding invoices. As such, we will put the release and settlement documents together this week."

5) <u>April 7, 2016 email from Robinson to Plaintiffs</u>: "[W]e are following up again to make sure that you understand that should Harborview Medical Center pursue you for any outstanding invoices (we now do not believe that HMC has outstanding) that you would be responsible. Once the policy limits are gone there is no further money to pay from. Please confirm your agreement.

6) <u>April 8, 2016 email from Plaintiffs to Robinson</u>: "We have checked with Harborview Medical Center billing and there are no outstanding invoices."

7) <u>April 9, 2016 email from Robinson to Plaintiffs</u>: "Ok, I am out of the country until April 17. I will work on the release upon my return.

Robinson never provided the release paperwork even though he stated he would do so at three different points in time—first, the week of March 21, 2016; then, the week of March 28, 2016; and finally, the week of April 18, 2016. Based on the record, no other communication occurred between the parties until May 10, 2016, when the Plaintiffs' attorney sent Defendants a letter expressing their intent to file suit.

Based on the series of emails set forth above, the court concludes that the parties did not have a settlement agreement in place. The first email from Robinson to Plaintiffs was not an offer to settle. The language indicated that it was a response to the Plaintiffs' inquiries about what had been paid to date. While it sets forth the remaining policy limits, the email did not communicate a "willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it."[14] That is, there was nothing to indicate that Plaintiffs could respond in a way that could conclude the agreement.

Even if it could be considered an offer, Plaintiffs' response was not an acceptance but a counteroffer. Their email stated that they would settle for the rest of the insurance money if paid by March 24, 2016 "and no later." That is, they stated that they would accept the remaining amount on the policy in exchange for release of all claims if they received payment by March 24, 2016. Plaintiffs argue that Defendants never accepted this offer because acceptance had to be through specific performance; that is, Plaintiffs assert that to create a contract, Defendants had to tender payment by March 24, 2016, which Defendants failed to do. Whether Plaintiffs' offer to settle

---

[14]Restatement (Second) of Contracts § 24.

-6-

prescribed a specific form of acceptance, their email at least clearly made time of the essence, and Robinson's subsequent email on March 17 indicated that payment would take "longer than you might like" or else Plaintiff would have to agree to be responsible for any outstanding invoices. That is a rejection of the March 24, 2016 deadline set forth in Plaintiff's settlement offer.[15] Robinson's response on March 17 also indicated that the insurance company would have to set aside $5,000 of the remaining money for thirty days to cover any additional expenses that could arise post-settlement and that any outstanding amounts owed to medical providers would become Plaintiffs' responsibility to pay. Robinson was essentially communicating to Plaintiffs that the actual amount of the settlement was going to be less than the amount initially set forth in the February 18 email and of an unknown final value, given that there was no discussion at this point as to what expenses and medical bills remain outstanding. Therefore, Robinson was not unequivocally accepting Plaintiffs' offer to settle and simply discussing payment details that were otherwise consistent with the final agreement, but rather he was qualifying the terms of the Plaintiffs' offer to settle, which constitutes a rejection of the original offer and becomes a counter-offer.[16]

Moreover, it is clear from the email that Robinson himself did not believe he was accepting an offer because he specifically requested an acceptance from Plaintiffs: "We

---

[15]*See SW Marine, Inc. v. State, Dep't of Transp. & Public Facilities, Div. Of Alaska Marine Highway Sys.*, 941 P.2d 166, 173 (Alaska 1997) (noting that a qualified approval is not an acceptance); *Thrift Shop, Inc. v. Alaska Mut. Sav. Bank*, 398 P.2d 657, 659 (Alaska 1965) (holding that a contract is not formed unless the acceptance is unequivocal and in "exact compliance" with the offer).

[16]*Id.*

await your written response." Indeed, Robinson's later April 7, 2016 email was still looking to "confirm [Plaintiffs'] agreement" that if they settle for the policy amounts there would be no more money coming from the insurance company to pay any outstanding invoices that may exist. Robinson's April 7 email supports the court's finding that his prior March 17 email was a counteroffer and that as of April 7 the Plaintiffs' had not unequivocally accepted that counter-offer. After Plaintiffs' March 24 deadline had passed, there is nothing in the record to verify Plaintiff's intent to be bound.

Defendants argue that the parties clearly had an agreement to settle for the remaining policy terms and that the deadline was not material but rather just a payment detail apart from and not inconsistent with their agreement to settle for policy limits. In support, Defendants refer to Plaintiffs' April 8 email, where, in response to Robinson's request that Plaintiffs' confirm that they will be responsible for any outstanding invoices as a result of settlement for remaining policy limits, they stated "[w]e have checked with Harborview Medical Center billing and there are no outstanding invoices." Defendants assert that through this email Plaintiffs ratified the existence of an agreement to take whatever was remaining from the policy and to excuse or ignore any March 24 deadline.

The court disagrees with Defendants' assessment. As noted above, a settlement agreement is a contract, and the existence of a contract requires an offer containing all essential terms, an unequivocal acceptance, consideration, and an intent to be bound. The April 8 email is not an unequivocal acceptance by Plaintiff of Robinson's March 17 counteroffer, nor is it an adequate showing of their intent to be bound. It simply states that they do not have any outstanding invoices from their

medical provider, which does not definitively provide the clarification Robinson had asked for. At this point in the email exchange, which is more than a month after the parties initially started discussing settlement for the remaining policy amounts and fifteen days after their stated March 24 deadline, there had been no updated information exchanged about how much money was left under the insurance policy and how much would be withheld or taken for fees and expenses.[17]  Moreover, Plaintiffs' email does not definitively communicate their intent to be bound after March 24, 2016, to take whatever is left of the insurance money in exchange for a release.

## V.  CONCLUSION

Based on the preceding discussion, Defendants' motion for summary judgment at docket 17 is DENIED.

DATED this 5th day of February 2017.

/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT

---

[17] See Magill v. Nelbro Packing Co., 43 P.3d 140, 142 (Alaska 2001) ("The contract amount, in particular, must be definite and specific").